A01A0566. JACOBS et al. v. THOMSON OAK FLOORING.
(550 SE2d 465)

ANDREWS, Presiding Judge.

Herbert Jacobs, Jr. appeals from the trial court's grant of summary judgment to Thomson Oak Flooring (Thomson) on his claims for the wrongful death of his wife. For reasons which follow, we affirm.

This case arose when Greg Lee loaned one of his company's logging trucks, loaded with a "skidder," to John Howard, one of his employees. Howard asked to borrow the truck because he wanted to clean up some of his property over the weekend. Lee told Howard to return the truck to the work site by Sunday. Howard did not return the truck on Sunday but instead was returning it early Monday

---

[12] (Citations omitted.) *Mitchell v. State*, 242 Ga. App. 177, 183 (6) (529 SE2d 169) (2000); *Parham v. State*, 218 Ga. App. 42, 44 (4) (460 SE2d 78) (1995).

morning when the accident with Stephanie Jacobs occurred. The wheels and tires of the skidder that was being hauled on the truck extended out and into the lane in which Stephanie Jacobs was driving. Her car collided with the skidder, and she was killed and her two children were injured.

Jacobs first filed suit against Lee and Howard.[1] He later amended his complaint to add claims against Thomson. Thomson filed a motion for summary judgment which was granted by the trial court. This appeal followed.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (503 SE2d 581) (1998).

1. Jacobs claims the trial court erred in granting Thomson's motion for summary judgment because there was evidence that Thomson was responsible for the negligent acts of Lee and Howard under the theory of respondeat superior. We disagree.

OCGA § 51-2-4 provides "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer."

> An employer-employee relationship exists when the employment agreement gives, or the employer assumes, the right to control the time and manner of executing the work. In an employer-independent contractor relationship, the employer has the right merely to require results in conformity with the employment agreement, and the independent contractor retains the right to perform the work by his own means, method and manner.

(Citation omitted.) *McDaniel v. Peterborough Cablevision*, 206 Ga. App. 437, 438 (425 SE2d 424) (1992).

> If one is employed generally to perform certain services it may be inferable that the employer retained the right to control the manner, method and means for performance of the

---

[1] Those claims remain pending and are not part of this appeal.

contract. However, where there is a specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the right of control was not retained and an independent contractor relation existed.

*N. S. Co. v. Cincinnati Ins. Co.*, 203 Ga. App. 347, 348 (416 SE2d 859) (1992).

Here, the record shows that Lee cut timber for International Paper and for Thomson. He was paid by the ton for the wood he cut, and he negotiated the price before he began cutting. He owned the truck and skidder that were involved in the accident. Charles Kimbrel, president of Thomson, stated that Lee was one of several independent contractors that Thomson used to cut and haul timber. Under the oral agreement with Lee, Thomson designated what tracts of timber to cut and where to haul it. Thomson paid Lee on a per tonnage basis for the timber. Thomson did not withhold any taxes or contribute to Lee's Social Security taxes and provided no benefits for Lee of any kind. In addition, Thomson had no authority to hire or fire any of Lee's employees, nor did it have the authority to direct the manner of their work. A representative of Thomson would periodically visit the timber cutting site to determine that the cutting was being done properly and within the boundaries of the tract.

Jacobs argues that because Thomson retained the right to terminate Lee at any time, dictated when and how much wood Lee harvested, and the price he would be paid, there was evidence that Lee was an employee. First, this ignores the fact that Lee also worked for International Paper and, therefore, Thomson did not have the "ability to stop Lee's cash flow," as Jacobs contends. Second, this argument misrepresents the evidence. Contrary to Jacobs's statement that "Defendant Thomson does not negotiate compensation with its loggers," Kimbrel stated in his affidavit that Thomson negotiated the price with Lee on a case-by-case basis. Although McNure, a Thomson employee, testified that there were certain guidelines as to what the company was willing to pay the loggers, this does not contradict Kimbrel's statement that he negotiated prices with Lee.

In addition, Jacobs argues that the loggers were paid every week. This is correct; however, the checks that were issued were for the number of tons actually cut during that week. McNure also testified that he checked on the job site about once a week to make sure the timber was being cut according to specifications.

This case is factually similar to *Yow v. Fed. Paper Bd. Co.*, 216 Ga. App. 652 (455 SE2d 372) (1995) and *Slater v. Canal Wood Corp. &c.*, 178 Ga. App. 877 (345 SE2d 71) (1986). A reading of these two cases shows that this Court found an independent contractor relationship even though the degree of control exercised by the defend-

ants in those cases was in excess of the control exercised by Thomson in this case. In *Yow* and *Slater,* this Court rejected the argument that because defendants retained the right to inspect the tract where the cutting was being done, required the cutter-hauler to carry certain types of insurance and to comply with applicable laws, reserved the right to make recommendations about the work, and required the work to be done according to industry standards, there was no independent contractor relationship. The court concluded that this evidence was not sufficient to show that defendants controlled the time, manner, and method of performance under the agreement. *Yow*, supra at 655; *Slater*, supra at 881-882.

Likewise, Jacobs's reliance on *Davis v. Beasley Timber Co.*, 241 Ga. App. 706 (527 SE2d 221) (2000), is misplaced. In *Davis*, the plaintiff claimed there was evidence that the negligent truck driver was an employee of the timber company where the company owned the truck he was driving, told him when to report for work to pick up a load of timber, gave him a handbook on company policy, and explained the company's "Do's and Don'ts." Id. at 708. None of the above facts are present in this case.

2. Even if we were to conclude that Lee was an employee, which we do not, Howard was not acting within the scope of his employment when the accident occurred.

> To hold a master liable for a tort committed by his servant, it must appear that at the time of the injury the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment. The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.

(Citations, punctuation and emphasis omitted.) *Yow*, supra at 655-656 (3).

Here, the evidence was that the truck and skidder which caused the accident were normally left on the job site over the weekend. But, on this particular weekend, Lee gave Howard permission to take the truck for his personal use. Howard was supposed to return the truck on Sunday but did not return it until Monday morning. Accordingly, because Howard was transporting the skidder for his own purposes, he was not acting within the scope of his employment when the accident occurred, and Thomson cannot be liable for any of Howard's negligent acts. *Yow*, supra; *Braddy v. Collins Plumbing &c.*, 204 Ga. App. 862, 864 (420 SE2d 806) (1992).

3. Jacobs alleges the trial court erred in granting summary judg-

ment on the issues of inherently dangerous activity and breach of a statutorily imposed duty because these issues were not addressed in Thomson's motion for summary judgment. Although this statement is true, it is misleading. Thomson's reply brief in support of its motion for summary judgment addresses both the inherently dangerous and statutory violation theories in detail, and the trial court's order acknowledges that the reply brief was before it for consideration.

Also, because Jacobs has not filed a transcript of the hearing on the summary judgment motion, we must assume that the trial court properly considered the issues presented. *Wolfork v. Tackett*, 241 Ga. App. 633, 635 (526 SE2d 436) (1999) (Blackburn, P. J., concurring specially). The trial court's order expressly refers to the hearing on oral argument. The burden is on Jacobs to show error by the record, and "when a portion of the record which is necessary for our determination of one or more appellate issues is not before the court, the trial court's express or implicit ruling as to those issues must be affirmed. For this additional reason, the grant of summary judgment by the trial court must be sustained." (Citation omitted.) *Gill v. B & R Intl.*, 234 Ga. App. 528, 531-532 (1) (c) (507 SE2d 477) (1998).

4. Next, Jacobs claims that there are issues of fact as to whether Thomson is liable for violating OCGA § 51-2-5 (2), which provides that an employer is liable for the negligence of an independent contractor "[i]f, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed." Jacobs argues there is evidence that hauling the logging equipment which caused the accident is an inherently dangerous activity. He cites to no case law on point in support of this claim, and we find none.

"In order for OCGA § 51-2-5 (2) to apply, the work must be in its nature dangerous to others however carefully performed." (Emphasis omitted.) *Rice v. Delta Air Lines*, 217 Ga. App. 452, 454 (2) (b) (458 SE2d 359) (1995). Where the work is not inherently dangerous except as a result of the negligence of the contractor, the employer is not liable. *St. Paul Cos. v. Capitol Office Supply Co.*, 158 Ga. App. 748, 749 (282 SE2d 205) (1981).

Thomson points out that the hauling of overwide loads is permitted so long as certain safety precautions are taken. The only evidence in the record is that the accident occurred because of Howard's negligence in not having escort vehicles, driving before it was fully light, and not driving on approved roads.

Jacobs submitted the affidavit of the owner of a firm which specializes in the investigation of accidents. But, the affidavit was not legally sufficient to withstand a motion for summary judgment. See *Horney v. Panter*, 204 Ga. App. 474, 478 (420 SE2d 8) (1992) (affida-

vit insufficient because a party resisting summary judgment must come forward with evidence sufficient to create an issue of fact and also must present some credible warrant for its admissibility). Here, the affiant stated that it was his opinion that moving overwide loads was inherently dangerous to others, no matter how carefully performed. As the trial court pointed out in its order, the expert gave no examples, cited to no statistics, and failed to state whether there were any known incidents of accidents occurring despite full compliance with safety regulations.

Moreover, even if Jacobs could somehow show the activity in question was inherently dangerous, this argument would have no merit for the reasons set forth in Division 2, supra.

5. Jacobs also contends that Thomson is liable because the wrongful act was in violation of a duty imposed by statute. He claims that Howard violated nine different statutes and regulations when he hauled the skidder on the day in question, most addressing the movement of overwide equipment.

"Pursuant to OCGA § 51-2-5 (4), an employer is liable for the negligence of an independent contractor who is performing the employer's nondelegable statutory duty." (Citations omitted.) *Perry v. Soil Remediation*, 221 Ga. App. 386, 388 (2) (471 SE2d 320) (1996). Here, as set out in Division 2, supra, Howard was not performing any duty for Thomson at the time of the accident. Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED JUNE 11, 2001 —

*Franklin, Taulbee, Rushing, Snipes & Marsh, James B. Franklin, Daniel B. Snipes*, for appellants.
*Alembik, Fine & Callner, Mark E. Bergeson*, for appellee.